IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION

HUMANSCALE CORP.,

    Plaintiff/Counterclaim Defendant,

v.

COMPX INTERNATIONAL INC. and
WATERLOO FURNITURE COMPONENTS
LTD.,

    Defendants/Counterclaim Plaintiffs.

Action No. 3:09–CV–86

**MEMORANDUM OPINION**

This matter is before the Court on CompX's Motion for Attorneys' Fees. For the reasons stated below, the Motion will be DENIED.

**I. BACKGROUND**

In February 2009, Humanscale Corp. initiated this suit when it filed a Complaint against CompX International Inc. and CompX Waterloo (collectively "CompX") regarding Humanscale's U.S. Patent No. 5,292,097 ("the '097 Patent). In March, CompX filed a counterclaim, alleging that Humanscale infringes on two of CompX's patents, specifically U.S. Patent Nos. 5,037,054 ("the '054 Patent") and 5,257,767 ("the '767 Patent") (collectively "CompX Patents"). Both the '054 and the '767 Patents are entitled "Adjustable Support Mechanism for a Keyboard Platform." As the titles suggest, the Patents relate to keyboard support mechanisms that attach to the underside of a desk and pivot to allow users to store their keyboards under the desk when not in use.

By order of this Court, Humanscale's suit regarding the '097 Patent was stayed,

1

however, CompX's counterclaims were not stayed. Humanscale responded to CompX's claims by asserting various affirmative defenses, including patent misuse, false marking, and unclean hands (Dock. No. 17). After holding a pretrial conference, the Court entered a Scheduling and Pretrial Order, setting the trial to begin on February 16, 2010, the expert report deadline as November 18, 2009, the discovery cutoff date as January 6, 2010, and the due date for dispositive motions as January 7, 2010 (Dock. No. 35). The Scheduling Order also required the parties to meet and confer on potential fact stipulations for presentation to the Court at least ten days before trial.

In the summer of 2009, as the parties worked to sharpen their claims and defenses, Humanscale sent CompX a proposed amended answer and amended complaint, which included claims for false marking and inequitable conduct. On September 2, CompX consented to the proposed pleading and the next day Humanscale filed its amended complaint with the Court (Dock. No. 39). After the amended complaint was filed, CompX apparently for the first time realized that the document contained a false marking claim and contacted Humanscale in protest because CompX thought the parties had both agreed that neither party would assert a false marking claim. To resolve the issue, the parties briefed it to the Court, which then denied the request to add the false marking claim, but granted the request as to the inequitable conduct claim (Dock. No. 69).

Beginning in the summer of 2009, discovery also proceeded in earnest, with CompX seeking information to support its claim of infringement and financial information and one of Humanscale's prior licensing agreements to support its damages claim. CompX served its first set of interrogatories and document requests on Humanscale in June of 2009.

Humanscale responded in July and several additional times over the following months, however, CompX remains unhappy with the responses.[1]

In October, Humanscale sent CompX a letter alleging violations of Rule 11 based on the alleged withholding of evidence on Humanscale's on-sale bar defense. No formal Rule 11 motion was ever made and Humanscale's Motion to Compel in connection with that evidence was denied as moot after the parties essentially agreed that CompX had provided all the relevant existing documents on that topic (Dock. No. 112).

In November, CompX filed a Motion to Compel (Dock. No. 77), which sought the financial and non-financial information that it had already asked for, but not received. The Court granted the motion, requiring Humanscale to produce the requested financial information and to make available properly prepared 30(b)(6) designees on the non-financial topics (Dock. No. 113). The Court also ordered Humanscale to pay CompX's fees expended in connection with that motion (Dock. No. 139). CompX asserts that Humanscale's delay in providing the financial information required it to file several supplemental expert reports leading up to trial. It also reports that Humanscale has not paid the fees the Court awarded to it yet.

Over the following months leading up to trial, the parties held several depositions, which depending on which party you ask, were timely and responsive or were intentionally delayed and substantively weak. Humanscale's CEO Robert King was deposed for a second time on January 7, 2010. Humanscale's designer, George Mileos, was scheduled to be

---

[1] A more in-depth review of the background of this discovery dispute appears in the Court's Memorandum Opinion on the parties' motions to compel (Dock. No. 112).

3

deposed the next day, however on January 4, Humanscale informed CompX that Mileos was no longer available for that day and he would have to do it on January 15, 2010, which is when it eventually occurred. Humanscale explained the reason for the cancellation to CompX on January 12. Humanscale's General Counsel, Patrick Hoeffner, was deposed on January 11, 2010. The parties disagree over whether Hoeffner and his counsel properly asserted the attorney-client privilege when not answering questions regarding the Haworth Licensing Agreement that Humanscale had negotiated and the information Humanscale had provided to its infringement expert, Dr. Pratt. Humanscale employee Scott Barry, who measured the tilt magnitude on the Humanscale devices, was deposed on January 12, 2010. Finally, on January 22, Michelle Gerards, Humanscale's Vice-President of Finance, was deposed on the financial topics.

The discovery period eventually gave way to the jury trial held on February 16 until February 22, 2010. Prior to the case going to the jury, the Court granted CompX's motion for judgment as a matter of law on Humanscale's unclean hands defense. For its part, the jury concluded that each of Humanscale's accused devices infringed the patents-in-suit and awarded CompX $19,372,500 in damages. CompX has now filed this Motion, alleging that these facts make this an exceptional case under 35 U.S.C. § 285 warranting an award of attorneys' fees or alternatively that the Court should award attorneys' fees under either 28 U.S.C. § 1927 or using its inherent power. Humanscale opposes the motion in all respects.

## II. LEGAL STANDARD

A court may award attorney fees to a party in "exceptional" cases pursuant to 35 U.S.C. § 285. A trial court undertakes a two-step inquiry when adjudicating a request for

attorney fees. The court examines first whether there is clear and convincing evidence that the case is exceptional, and second, whether an award of attorney fees to the prevailing party is warranted. Cybor Corp. v. FAS Techs., 138 F.3d 1448, 1460 (Fed. Cir. 1998) (en banc).[2] The decision to award attorney fees is one committed to the discretion of the trial court, 35 U.S.C. § 285 (2000), and is thus reviewed for an abuse of discretion, Molins PLC v. Textron, Inc., 48 F.3d 1172, 1178 (Fed. Cir. 1995).

The court also has the authority to award statutory attorneys' fees under 28 U.S.C. § 1927 which provides:

> Any attorney or other person admitted to conduct cases in any court of the United States . . . who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct.

28 U.S.C. § 1927. This provision "focuses on the conduct of the litigation and not on its merits." DeBauche v. Trani, 191 F.3d 499, 511 (4th Cir. 1999). Merely negligent conduct will not support an imposition of sanctions under 28 U.S.C. § 1927. See United States v. Wallace, 964 F.2d 1214, 1219 (D.C. Cir. 1992). Instead, § 1927 requires "a finding of counsel's bad faith as a precondition to the imposition of fees." See Chaudhry v. Gallerizzo, 174 F.3d 394, 411 n. 14 (4th Cir. 1999) (internal quotations omitted). Thus, § 1927 authorizes sanctions only when counsel's bad faith conduct multiplies the proceedings, resulting in excess costs for the opposing party. In re Gould, 77 F. App'x 155, 161 (4th Cir. 2003).

---

[2] "Federal Circuit case-law [applies] to the § 285 analysis, as it is unique to patent law." Digeo, Inc. v. Audible, Inc., 505 F.3d 1362, 1366 (Fed. Cir. 2007).

In addition to those statutory grants of power, federal courts also have some inherent power to impose sanctions. Sanford v. Commonwealth of Va., 689 F. Supp. 2d 802, 813 (E.D. Va. 2010). This power allows a court to sanction an attorney's actions taken in bad faith, wantonly, oppressively, or vexatiously. Royal Ins. v. Lynnhaven Marine Boatel, Inc., 216 F. Supp. 2d 562, 567 (E.D. Va. 2002). It is a power that "ought to be exercised with great caution," in circumstances such as those involving "the very temple of justice [being] defiled." Id. (citations omitted). In Sanford, Judge Payne explained the scope of the court's inherent power as follows:

> The Court's inherent power to impose sanctions is in some respects broader, and in other respects narrower, than its authority to impose sanctions pursuant to § 1927. It is broader, in that it covers every type of litigation misconduct, unlike rule-based and statutory authorities such as Rule 11, Rule 37, and § 1927, which concern themselves with specific types of misconduct. But, the Court's inherent power is narrower in that the misconduct required is almost always something more egregious than that required for other types of sanctions.

Sanford, 689 F. Supp. 2d at 813.

### III. DISCUSSION

**A. Parties' Arguments**

CompX contends that Humanscale and its counsel committed several acts of misconduct that warrant an award of attorneys' fees. First, CompX states that Humanscale withheld discovery in key areas even after the Court ordered Humanscale to produce certain information. Discovery on infringement was withheld, CompX says, because Humanscale did not produce its 30(b)(6) deposition witness, Scott Barry, until after the discovery and dispositive motions deadlines had passed. Financial discovery was withheld in several ways. CompX claims Humanscale's quarterly sales data was withheld until mid-

6

January and was only produced after CompX notes it filed a motion to compel, and then, only a month after the Court granted the motion.  By producing this information late, CompX says its damages expert had to file multiple supplemental reports and CompX was hindered in preparing for trial.  CompX also takes issue with the fact that Humanscale did not make their financial witness Michelle Gerard available until January.  CompX says that at Gerard's deposition, it learned that Humanscale's attorney, Andrew Pratt, had apparently falsely represented that certain financial data was difficult to obtain because Gerard testified that the quarterly sales data could be available within ten days of the end of any quarter.  CompX further complains that Humanscale gave its own experts early access to Gerard and was thus not unavailable despite Humanscale's representations otherwise.  Humanscale also withheld the Haworth Agreement by failing to produce it and directing its witnesses to assert privilege over the document even though, CompX says, the Court's order granting its motion to compel required Humanscale to produce the document.

CompX next claims that Humanscale engaged in vexatious tactics by sending CompX a Rule 11 letter seeking information on Humanscale's on-sale bar defense.  CompX says that this letter, which was never filed as a motion with the court, had no merit and was intended to merely disrupt CompX's trial preparations.  CompX notes that the Court denied Humanscale's motion to compel in connection with this issue.

Lastly, CompX claims that Humanscale engaged in other misconduct by advancing frivolous claims and defenses that were not supported by any evidence.  CompX recalls that Humanscale initially asserted patent misuse, false marking, and unclean hands as

affirmative defenses.  Later, Humanscale abandoned its misuse defense and then, CompX says, after agreeing to drop the false marking claim, filed an amended complaint that made such a claim.  The unclean hands defense, CompX observes, was later dismissed by the Court only after CompX prepared and moved for judgment as a matter of law.  As trial approached, CompX maintains that it attempted to confer with Humanscale on fact stipulations, as was required by the Scheduling Order, however, CompX contends, Humanscale completely ignored its request and therefore no stipulations were entered.  CompX alleges that these actions taken together forced it to incur additional expenses to file multiple supplemental expert reports and prepare discovery dispute motions, and prevented it from moving for summary judgment.

Humanscale takes issue with each of CompX's contentions.  First, concerning CompX's claim that infringement discovery was withheld, Humanscale contends that CompX has failed to reveal the entire chronology of events that resulted in Scott Barry's deposition occurring in January.  Humanscale points out the following:

- On November 8, 2009, CompX's expert Dr. Wood filed his initial expert report on infringement

- The companion proceeding before the ITC was tried on December 1 to December 4, 2009

- On December 18, 2009, Dr. Pratt filed his rebuttal non-infringement report.

- On December 29, 2009, the parties held a deposition scheduling conference, during which they attempted to coordinate sixteen depositions occurring in seven cities. During this conference, Humanscale says the parties agreed that some of the

depositions would have to occur after the discovery cut-off. Humanscale also stated that it would be willing to extend the deadline for filing dispositive motions, however, CompX said it would take the proposal "under advisement" and in a later email CompX stated that the deadline need not be extended.

- On January 4, 2010, Dr. Wood filed his sur-rebuttal infringement report. That same day, CompX proposed that Dr. Wood's deposition occur on January 13, 2010. CompX also asked for a Humanscale 30(b)(6) witness on the infringement topics and Humanscale responded that Barry was available for a deposition on January 12, 2010 in New Jersey. The next day CompX confirmed those dates for those depositions.

- On January 14, 2010, CompX deposed Humanscale's Dr. Pratt.

Thus, Humanscale notes CompX's characterization of how discovery proceeded as to the infringement issues is incorrect and misleading. It also says the delays were the result of the ITC proceeding and occurred with consent of both parties. CompX could have still filed a summary judgment motion, Humanscale reports, but CompX simply rejected Humanscale's offer to extend the dispositive motions deadline.

As to CompX's assertions regarding the discovery of Humanscale's financial information, Humanscale believes that it did not withhold any discovery that was critical to CompX's damages claim. Humanscale thinks that CompX's complaints are overblown. In Humanscale's view, CompX's receipt of the third and fourth quarter sales data from 2009 on January 14, 2010 and the January 22, 2010 deposition of Gerard did not frustrate CompX's ability to prepare its case. Humanscale notes that although CompX's expert Troxel

had to file supplemental reports because of the additional sales data provided by Humanscale, it could not have provided the fourth quarter data any earlier than it did and, in any event, Troxel did not do new complex analyses, but simply applied the same 8% reasonable royalty that he had used from his very first report.

In response to CompX's suggestion that Humanscale delayed in producing its product-by-product sales figures, Humanscale explains that like the quarterly sales data, it was unable to provide all of the sales data until the year actually ended. Humanscale also asserts, as it has all along, that it does not keep sales data on a per product basis and thus CompX's request required a significant amount of analysis and work to produce that information. Humanscale additionally states that it has not provided the Haworth Agreement for the same reason that CompX was unable to provide additional documents on the on-sale bar issue—it has been unable to locate it.

CompX's complaint about Humanscale's Rule 11 letter is misplaced, Humanscale suggests, because the request was supported by the discovery record. Humanscale notes that the additional investigation CompX undertook after receiving the letter in fact turned up additional documents relevant to the on-sale bar defense.

Humanscale next represents that it did attempt to work with CompX to establish fact stipulations before trial and that when it received CompX's instant motion it contacted CompX to inform it of the mistake. Humanscale says that CompX said it would file an amended brief, however, no amended brief has been filed.

Lastly, Humanscale rejects CompX's argument that Humanscale engaged in misconduct by asserting frivolous claims and defenses. Humanscale comments that it

withdrew its patent misuse defense at an early stage in this case, just as, Humanscale notes, CompX did with its false marking claim. As to Humanscale's false marking claim that was included in the amended complaint and then withdrawn after the court rejected the amendment, Humanscale notes that it submitted the proposed amended complaint to CompX before it submitted it to the Court and then once the discrepancy between the parties arose Humanscale notes it agreed to brief the issue to the Court so that it may resolve the issue. As to the unclean hands defense that was dismissed during trial after CompX filed for judgment as a matter of law, Humanscale notes that this was not the only claim or defense the parties had in play that was then not pursued at trial. It observes that CompX dropped some of its infringement claims on the eve of trial, all of which, Humanscale recalls, involved extensive discovery, expert reports, claim construction briefing, and trial preparation. Humanscale also points out that the Court dismissed CompX's claims for willful infringement, induced infringement, and contributory infringement because of lack of evidence.

Based on its review of the conduct in this case, Humanscale concludes that this case is not exceptional because it did not engage in grossly-negligent or bad-faith behavior that would warrant such a finding under any standard that CompX proposes.

**B. Analysis**

Under 35 U.S.C. § 285, "[t]he court in exceptional cases may award reasonable attorney fees to the prevailing party." The prevailing party must prove an exceptional case by clear and convincing evidence. Forest Labs., Inc. v. Abbott Labs., 339 F.3d 1324, 1327 (Fed. Cir. 2003). The existence of an exceptional case may be proven by showing:

inequitable conduct before the PTO; litigation misconduct; vexatious, unjustified, and otherwise bad faith litigation; a frivolous suit or willful infringement. Epcon Gas Sys., Inc. v. Bauer Compressors, Inc., 279 F.3d 1022, 1034 (Fed. Cir. 2002)(citing Hoffmann-La Roche Inc. v. Invamed Inc., 213 F.3d 1359, 1365 (Fed Cir. 2000)). Litigation misconduct and unprofessional behavior are relevant to the award of attorney fees, and may suffice, by themselves, to make a case exceptional. Sensonics, Inc. v. Aerosonic Corp., 81 F.3d 1566, 1574 (Fed. Cir. 1996). The Federal Circuit has cautioned that an award of attorney fees under § 285 is not intended to be an "ordinary thing in patent cases," and that it should be limited to circumstances in which it is necessary to prevent "a gross injustice" or bad faith litigation. Forest Labs., 339 F.3d at 1329.

CompX claims that the Court should award it attorneys' fees because Humanscale withheld discovery material in connection with its infringement claim and damages evaluation, brought claims and defenses that were frivolous, and unnecessarily threatened a Rule 11 motion without any basis. The majority of CompX's contentions are largely exaggerated and only present half the story. A full review of those issues reveals a contentious litigation waged between two market competitors, but not actions characterized by bad-faith or frivolity.

CompX's assertions concerning the infringement discovery are incomplete. The parties agreed to depose Humanscale employee Scott Barry after the discovery and dispositive motions deadlines had passed. Humanscale offered to extend the dispositive motions deadline so that CompX could seek summary judgment, however, CompX declined to do so.

Similarly, as to the financial discovery, it is clear that Humanscale could not have provided the fourth quarter sales data much earlier than it did. CompX's assertion that Humanscale's counsel improperly represented that this sales data was difficult to obtain conflates the two types of sales data CompX requested. Humanscale told CompX that the product-by-product sales data was difficult to obtain because it did not keep that information. Humanscale did not state that the quarterly sales data was difficult to obtain. Although it appears that the third quarter sales data, which was provided in January of 2010, was provided somewhat late, in the end, it caused no harm to CompX because it would have had to update its damages calculations anyway once it received the fourth quarter data. Moreover, Humanscale is correct that it appears CompX's expert Troxel merely had to re-run the calculation with additional sales data, but did not have to do new complex analyses, because throughout the litigation Troxel has maintained that the reasonable royalty rate should be 8%.

The Rule 11 letter Humanscale sent to CompX was not unjustified nor is there any evidence of bad faith. As is made clear by Humanscale's laches motion, Humanscale has maintained throughout this litigation that CompX's claims should be barred because the patents in suit were on sale or offered for sale before the critical date of June 13, 1989. Indeed, the letter Humanscale sent resulted in more investigation by CompX which in turn led to the discovery of additional evidence relevant to Humanscale's defense.

Although Humanscale asserted several claims and defenses that were either abandoned or dismissed for lack of proof, this fact alone does not show clear and convincing evidence of bad faith or misconduct. The patent misuse and unclean hands

claims were simply unsuccessful. The false marking-"gate" appears to have been the result of a mis-communication. Humanscale thought CompX had consented, CompX apparently didn't realize false marking had been added to the complaint. The issue was resolved by the Court and that should be the end of the issue.

There is one issue that gives this Court pause. Humanscale does appear to have been slow to comply with this Court's directive entered in connection with CompX's motion to compel. Humanscale was directed by Court order to provide CompX with the quarterly sales data on December 24, but the third quarter data was not produced until mid-January even though it surely already existed. Also, despite the Court's order requiring Humanscale to pay $6,890 on January 22, 2010 in connection with the motion to compel, Humanscale has apparently not complied.

Despite this concern, the Motion is DENIED. CompX has failed to show by clear and convincing evidence that this case is exceptional under 35 U.S.C. § 285, see Forest Labs., 339 F.3d at 1327, or warrants invocation of 28 U.S.C. § 1927, or this Court's inherent authority to impose sanctions. As is evident from the above discussion, this case has been a hard-fought and close litigation, necessitating a lengthy trial involving a voluminous record. Simply put, however, CompX has not shown that there was bad faith, inequitable conduct, or vexatious activity on the part of Humanscale. See Epcon Gas Sys., Inc. v. Bauer Compressors, Inc., 279 F.3d 1022, 1034 (Fed. Cir. 2000). Humanscale's failure to pay the ordered fees in connection with CompX's motion to compel is not to be condoned, but that fact alone or in combination with the other facts of this case does not make it exceptional for purposes of attorneys' fees.

## IV. CONCLUSION

For the foregoing reasons, the Motion for Attorneys' Fees is DENIED. An appropriate order will issue.

Let the Clerk send a copy of this Memorandum Opinion to all counsel of record.

It is SO ORDERED.

```
_____/s/_____
James R. Spencer
Chief United States District Judge
```

ENTERED this __16th__ day of August 2010